## UNITED MINES CO. v. HATCHER.

(Circuit Court of Appeals, Eighth Circuit. March 1, 1897.)

### No. 847.

1. CORPORATIONS—LEASE—LIABILITY OF LESSOR FOR DEBTS OF LESSEE.

Where a mining corporation executed a lease of its property for five years, by which the lessee covenanted to organize a "leasing company," to which the lease was to be assigned, stipulating that the stock of the new corporation was first to be offered to the stockholders of the lessor, the new corporation thus organized was not identical with the old, although the greater part of the stock was subscribed for by the stockholders of the old corporation, and the statutory liens of persons who have furnished supplies to the new corporation while operating the mines under the lease do not attach to the title of the lessor as owner of the mine. 75 Fed. 368, reversed.

2. SAME—RETROSPECTIVE STATUTES.

The lien law of Colorado having provided for a lien in favor of all persons who should perform labor or furnish material in the working of a mine, with the proviso that the statute shall not apply to the owners of any

mine "when the same shall be worked by lessee or lessees," an amendment to the statute materially modifying that proviso must be held to apply only to leases made after its enactment, as to give it a retrospective operation would be contrary to the express inhibition of section 11 of article 2 of the constitution of Colorado.

Appeal from the Circuit Court of the United States for the District of Colorado.

This was a suit in equity, brought by Ernest J. Hatcher against the United Mines Company and the United Leasing Company to enforce a mechanic's lien. Judgment was rendered against defendants, and the United Mines Company has appealed. The opinion of the circuit court is reported in 75 Fed. 368.

This is a suit in equity to establish and enforce alleged statutory liens upon four mining lodes or claims owned by the appellant, and situate in Mineral county, Colo., on account of cordwood, timber, and other mining supplies sold and furnished between October 1, 1895, and January 13, 1896, by the appellee and other persons, for the working of the mine, to the United Leasing Company, who, during that time, and prior thereto, had possession of said mining claims, which adjoined each other, and was working the same as a single mine. No question is made but that proper proceedings had been taken under the Colorado statute to perfect the liens, and that the other lien claimants had, before the suit was begun, for value, sold and assigned to the appellee their accounts and claims for liens. The United Leasing Company was made defendant, but did not answer, and the judgment against that company was by default. The only question in the case is whether the liens attached to the title of the appellant as owner of the mine. The agreed statement of facts shows that the appellant was an Iowa corporation, organized in December, 1893, when it acquired the title to this mine, and began to develop it, and that, after expending what moneys it could raise, and incurring an indebtedness to the amount of $15,000 or thereabouts, the directors, by authority of the stockholders, on April 1, 1895, executed an indenture of lease of said mine, including said four mining claims, to Robert H. Reid, for the term of five years from that date, in and by which the said Reid covenanted that he would at once pay all indebtedness of the appellant at that date, not exceeding $15,000, to be repaid the lessee out of royalties reserved; also that he would organize a leasing company, giving to the stockholders of appellant the option to subscribe to the stock thereof before the same should be opened to the general public for subscription, and would assign such lease to the leasing company. The lease contained covenants respecting the development and working of the mine, and reserved royalties to the lessor upon the ore obtained, and also had provisions respecting forfeiture and the determination of the lease. Such agreed statement further shows that on the same 1st day of April, 1895, the possession of said mining property passed under said lease to said Reid, who, on the same day, with other persons named, organized the United Leasing Company under the laws of the state of West Virginia, with a stock limited to $250,000, and that the agreement for such organization was received by the secretary of state of West Virginia on April 5, 1895, and the charter of incorporation thereunder was issued on the same day; that stock of said leasing company was then issued to the amount of $25,000, and was nearly all subscribed and paid for by stockholders of the appellant, as were likewise two later issues of such stock of $25,000 each; that said lease was assigned and transferred as of its date, but at a later time, by said Reid to said United Leasing Company, who entered upon the development and working of the mine, and expended about $75,000, and incurred the indebtedness for supplies for which the said liens are claimed, and ceased the operation of the mine on January 13, 1896. The agreed statement also shows that the United Leasing Company had its offices separate from those of appellant, and, while its stockholders originally were also, with two exceptions, stockholders in the appellant company, yet by transfers the stockholders became, in many instances, diverse.

W. H. Bryant (C. S. Thomas and H. H. Lee with him on the brief), for appellant.

John R. Smith (Albert L. Moses with him on the brief), for appellee.

Before SANBORN and THAYER, Circuit Judges, and LOCHREN, District Judge.

LOCHREN, District Judge, after stating the case as above, delivered the opinion of the court.

1. The lease executed by the appellant to Robert H. Reid on April 1, 1895, was valid and effectual as a lease and demise of the mining property. The covenants constituted a valuable and sufficient consideration, and under the lease he on that day became entitled to the immediate possession and use of the leased property, and it is admitted that the possession of the property passed on that day from the appellant to said Reid.

2. The terms of the lease did not constitute Reid the agent of the appellant in organizing the United Leasing Company. It was competent for the lessor to stipulate in its lease that the lessee should organize such a company to assume the lease and carry on the business, and Reid, in organizing such company, was fulfilling his covenants in that behalf. So also the provision that the stock of such new company should first be offered to stockholders of the appellant to subscribe for, or not, at their option, would not make the new corporation identical with the appellant, even if all the stock had been so subscribed for as to have included all the stockholders of the appellant. The corporation would not only differ in organization, but in objects and functions. Richmond & I. Const. Co. v. Richmond, N. I. & B. Ry. Co., 15 C. C. A. 289, 68 Fed. 105; Exchange Bank of Macon v. Macon Const. Co. (Ga.) 25 S. E. 326. It follows from the foregoing that the possession and working of the mine passed from the appellant on April 1, 1895, to its lessee, Reid, and soon afterwards to the United Leasing Company, upon Reid's transfer of the lease, and that at the time of the furnishing of material by the appellee and other lien claimants the mine was being worked, not by the owner, the appellant, but by its substituted lessee, the United Leasing Company, under the lease which took effect, and under which the lessee entered into the possession of the mine, on the 1st day of April, 1895.

3. The lien law of Colorado at the time this lease went into effect provided for a lien in favor of all persons who should perform work or furnish material in the working of a mine, but with this exception: "Provided further, that this section shall not be deemed to apply to the owner or owners of any mine, lode, deposit, shaft, tunnel, incline, adit, drift, or other excavation, when the same shall be worked by lessee, or lessees." Sess. Laws Colo. 1893, p. 321, § 8. On April 13, 1895, by another act of the legislature of Colorado, the proviso was changed so as to read as follows: "Provided further, that this section shall not be deemed to apply to the owner or owners of any mine, lode, deposit, shaft, tunnel, incline, adit, drift, or other excavation, who shall lease the same in small blocks

of ground to one or more sets of lessees." Under the proviso in the act of 1893, first above quoted, and which was in force when the lease went into effect, the title of the appellant to the mine could not be subjected to any lien for material furnished to the lessee in working the mine. Any subsequent change in the statute law which, without the consent of the lessor, would subject its property to the payment of debts of the lessee, would seriously and injuriously affect the right and title of the lessor in the leased property. The amendment of 1895 must be held to have a prospective operation only, and to be applicable only to leases made after its enactment. To hold that it applies to past leases is to give it a retrospective operation, contrary to the express inhibition of section 11 of article 2 of the constitution of Colorado. Railway Co. v. Woodward, 4 Colo. 162; Lundin v. Railway Co., 4 Colo. 433. Wherefore it is ordered that so much of the decree appealed from as awarded a judgment against the United Leasing Company for the sum of $5,199.85, together with costs of suit, be, and the same is hereby, affirmed, and that the residue of said decree be reversed and annulled, and that the bill of complaint be dismissed, as against the United Mines Company, at the cost of Ernest J. Hatcher, complainant.