No. 25808

Lakewood Pawnbrokers, Inc., a Colorado Corporation v. The City of Lakewood, Colorado, a Municipal Corporation

(517 P.2d 834)

Decided December 24, 1973. Opinion modified and as modified rehearing denied January 14, 1974.

Bowman, Shambaugh, Geissinger & Wright, Arthur W. Bowman, for plaintiff-appellee.

Raymond C. Johnson, City Attorney, Douglas S. Wamsley, Deputy, for defendant-appellant.

*En Banc.*

MR. JUSTICE KELLEY delivered the opinion of the Court.

This is an appeal by the City of Lakewood from a judgment of the district court declaring the City's ordinance regulating the business of "pawnbrokering" unconstitutional. The appellee, Lakewood Pawnbrokers, Inc., an entity subject to the ordinance, instituted the action for a declaratory judgment under the provisions of C.R.C.P. 57(b) and C.R.C.P. 65 before the ordinance became operative.

Lakewood is a statutory city. It enacted the ordinance in question pursuant to the grant of authority in C.R.S. 1963, 139-32-1, which provides that:

"The governing bodies in cities and towns shall have the following powers:

. . . .

"(63) To license, tax, regulate, . . . *pawnbrokers,* . . ."

and the provisions of C.R.S. 1963, 139-58-1, *et seq.* relating to pawnbrokers.

The trial court held that the City may exercise its police power and require licenses of pawnbrokers, providing that the power to license is exercised reasonably and has a relationship to the public needs, safety, and general welfare. The court then found the provisions of the ordinance unconstitutional in the following respects:

"(a) The provisions in the proposed ordinance requiring surety bonds to run to the City of Lakewood and limiting the interest rate on loans to one and one-half per cent are in conflict with the state statute and are, therefore, declared to be illegal and invalid.

"(b) Section 30 of the ordinance relating to firearms singles out pawnbrokers and prohibits them from possessing, displaying, selling, or dealing in firearms, .which would be

discriminatory, unreasonable, confiscatory, and in violation of both state and federal constitutions.

"(c) Section 32 of the ordinance dealing with excess sums received from the sale of forfeited goods would infringe upon the rights of the parties to contract, and would be an unconstitutional infringement.

"(d) There are no provisions in the ordinance for any grandfather rights to take care of any business such as the plaintiff has that may have been in operation at the time of the enactment of the ordinance. Accordingly, the terms of the ordinance would be unconstitutional and invalid as they were applied to the plaintiff and would amount to a confiscation of property without due process of law.

"3. The court further concludes that the ordinance has no relationship to the public health, safety or general welfare of the inhabitants of Lakewood and, therefore, goes too far."

I.

Lakewood enacted the Pawnbrokers Ordinance, as heretofore noted, pursuant to C.R.S. 1963, 139-32-1, the general powers provision and under C.R.S. 1963, 139-58-1, *et seq.,* which contains specific provisions relating to the regulation of the business of pawnbrokers. Reference to several sections of 139-58-1, *et seq.,* will indicate the statutory scheme for municipal participation in the regulation and policing of those engaged in the pawnbroker business.

139-58-1 makes it unlawful for any corporation or person to establish or conduct the business of pawnbrokering without first procuring a license from the city and executing a bond in such sum as the city may require. 139-58-2 directs the mayor to grant licenses on terms specified by the city council to persons who shall produce satisfactory evidence of good character. 139-58-3 authorizes the city to collect a license fee. Other provisions relate specifically to bond requirements, records, pawn tickets, allowable interest rates, commission contracts, notice of sale, redemption of pledges, payment of surpluses to pledgor, the safekeeping and insurance of pledged articles, disposition of fines and the form of the record book.

It thus appears that the legislature has provided a comprehensive scheme for the regulation of pawnbrokers to be administered through its cities and towns. This statutory scheme has been on the books unchanged since its enactment in 1897, and the intent of the legislature to occupy this area has also long been recognized. *Solomon v. City of Denver,* 12 Colo. App. 179, 55 P. 199 (1898). This is true, at least, as to pawnbrokers charging the maximum rate of interest permissible under the statute. *But see Provident Loan Society v. Denver,* 64 Colo. 400, 172 P. 10 (1918).

■■ The issues to be resolved here depend on whether the various provisions contained in the ordinance and challenged in this lawsuit are in conflict with the statutory scheme of regulation. The test for determining whether such a conflict exists is whether the ordinance in question either licenses or permits that which the statute prohibits or whether it proscribes, burdens or limits that which the statute authorizes. *Vela v. People,* 174 Colo. 465, 484 P.2d 1204 (1971); *Davis v. Denver,* 140 Colo. 30, 342 P.2d 674 (1959); *Ray v. Denver,* 109 Colo. 74, 121 P.2d 886 (1942). It is fundamental that an ordinance of a statutory city that is in conflict with a state law of general application is invalid.

## II.

The trial court declared the bonding requirement of the ordinance invalid. Section 5.24.110 provides that every applicant for a pawnbroker's license "shall furnish two good and sufficient bonds with two separate corporate sureties" in the amount of $5,000 each. The statute provides:

"Every person licensed at the time of receiving such license shall enter into recognizance in such sum as shall be directed by ordinance of the city council . . ., with two or more sufficient sureties to the people of the state of Colorado, to be approved by the mayor, conditioned for the due observance of all such ordinances and regulations of the mayor and municipal authorities as may be passed or in force, respecting pawnbrokers, at any time during the continuance of such license, and for the safekeeping and return of all articles held in pawn by such pawnbroker in accordance with the

provisions of this article." C.R.S. 1963, 139-58-4.

■ There is a basic conflict between the ordinance and the statute in that the ordinance requires two bonds, whereas the statute merely requires two sureties on one bond. This is not a mere matter of form, as the City contends, but is a fundamental inconsistency. The ordinance places an additional burden on the licensee not required by the statute. The statute does, however, delegate to the city the power to fix the amount of the bond and condition its acceptance on compliance with other ordinances enacted under a statutory grant of authority. The trial court correctly concluded that the two-bond provision was invalid as being in conflict with the statute.

### III.

The court invalidated Section 5.24.220 of the ordinance which in material part provides:

"No pawnbroker shall ask, demand or receive any greater rate of interest, commission, and compensation than the total rate of one and one-half per cent per month or fractional part thereof, computed upon the amount of money actually advanced . . . ."

The statute relating to interest is C.R.S. 1963, 139-58-8, which provides:

"No pawnbroker shall ask, demand or receive any greater rate of interest, commission or compensation, and the same shall be computed upon the amount of money actually advanced, than the rate of three per cent per month or a fractional part of a month, on any loans by him, under a penalty of one hundred dollars for each and every offense. No other charge shall be made by said pawnbroker than provided in this section. Nothing in this section shall be construed so as to conflict with the law pertaining to interest or usuary."

■ The trial court held that there was a conflict between the ordinance and the statute and thus invalidated the ordinance. The City contends that since the language of the statute does not mandate a charge of 3% per month, the statute should be construed as setting an upper limit on the interest a pawnbroker may charge. Thus, the City argues, it

may set a lower monthly interest limit, and inasmuch as the ordinance rate is not greater than the statute, there is no conflict. We disagree.

 The general assembly in creating the licensing scheme here involved and in fixing a maximum rate of interest on a state wide basis for a pawnbroker's loan granted a statutory right to persons licensed under the act to make such loans at 3% per month. *Jones v. Parsons,* 136 Colo. 434, 319 P.2d 480 (1957); *Ray v. Denver, supra; Gronert v. People,* 95 Colo. 508, 37 P.2d 396 (1934). The ordinance is repugnant to the statute in that it prohibits what the statute expressly grants. *Vela v. People, supra; Davis v. Denver, supra; Ray v. Denver, supra.*

## IV.

 The trial court invalidated Section 5.24.300 of the ordinance relating to firearms on the grounds that it was discriminatory, confiscatory, and in violation of both the state and federal constitutions. The section reads in pertinent part:

"It is unlawful for any pawnbroker to receive in pledge, to display in his place of business, or to sell any manner of firearms . . . ."

The section is comprehensive as to the type of weapons proscribed.

Although the City was acting for a laudable purpose in attempting to lessen traffic in firearms which may be used in criminal activity, this section suffers from the same infirmity as those discussed above. The statute contains no limitations on the kind of property which a pawnbroker may take as security for a loan. Thus, the necessary implication is that the statute authorizes transactions involving firearms, and the ordinance must be declared invalid. *Ray v. Denver, supra.*

## V.

 The City raises additional issues with respect to the ruling of the district court which in light of the principles set out above and in the interest of brevity need not be discussed at length.

The district court erred in invalidating Section 5.24.320 of

the ordinance which relates to excess sums received from the sale of forfeited goods. This section does not conflict with C.R.S. 1963, 139-58-12 as it in no way alters the statutory scheme for the regulation of pawnbrokers. It merely provides an additional provision to implement the repayment scheme set out in the statute, and will be invoked only in the event of a willful violation of the statute.

The district court held that the balance of the ordinance was also invalid because it did not contain a "grandfather" clause and was therefore confiscatory as applied to Lakewood Pawnbrokers, Inc. We do not agree with this ruling. Vested rights do not accrue to thwart the reasonable exercise of the police power for the public good. *Hoskinson v. Arvada,* 136 Colo. 450, 319 P.2d 1090 (1957); *McCormick v. Montrose,* 105 Colo. 493, 99 P.2d 969 (1939); *Colorado Springs v. Miller,* 95 Colo. 337, 36 P.2d 161 (1934).

The district court erred in holding that the ordinance was not reasonably related to the City's police power. *See Provident Loan Society v. Denver, supra.* The ordinance contained a severability clause. Therefore, those provisions which were consistent with the statute should not have been invalidated until their unconstitutionality was demonstrated beyond a reasonable doubt. *People v. Sneed,* 183 Colo. 96, 514 P.2d 776; *Howe v. People,* 178 Colo. 248, 496 P.2d 1040 (1972); *People v. Prante,* 177 Colo. 243, 493 P.2d 1083 (1972).

The judgment is affirmed in part and reversed in part and remanded for further proceedings not inconsistent with the views expressed herein.

MR. JUSTICE DAY does not participate.