**The PEOPLE of the State of Colorado, Petitioner,**

v.

**D.K.B., Respondent.**

**The PEOPLE of the State of Colorado, Petitioner,**

v.

**R.C.F., Respondent.**

**Nos. 91SC631, 91SC654.**

Supreme Court of Colorado, En Banc.

Jan. 11, 1993.

---

7. Our conclusion is of course limited to the single subsection of the Longmont ordinance herein challenged.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., John Daniel Dailey, Deputy Atty. Gen., Robert Mark Russel, First Asst. Atty. Gen., Cheryl A. Linden, Asst. Atty. Gen., Appellate Section, Matthew S. Holman, Asst. Atty. Gen., Crim. Enforcement Section, Denver, for petitioner in No. 91SC631.

Paul Joseph Skok, Denver, for respondent D.K.B.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Maurice G. Knaizer, Deputy Atty. Gen., Dianne E. Eret, First Asst. Atty. Gen., Laurie Rottersman, Asst. Atty. Gen., General Legal Services Section, Denver, for petitioner in No. 91SC654.

Mark T. Langston, Boulder, for respondent R.C.F.

Justice MULLARKEY delivered the Opinion of the Court.

We granted certiorari in two cases, *D.K.B. v. People*, 824 P.2d 68 (Colo.App. 1991), and *R.C.F. v. People*, No. 89CA1589 (Colo.App., Aug. 15, 1991), to consider the Criminal Justice Records Act of 1977, as amended in 1988. §§ 24–72–301 to –309, 10B C.R.S. (1988). Specifically, we will examine whether the court of appeals erred in holding that the application to convicted persons of the current version of the statute governing the sealing of arrest and criminal records violated the constitutional prohibition against retrospective legislation. Because we find that the statute does not impinge on the prohibition against such legislation, we reverse the judgments of the court of appeals.

## I.

The Colorado legislature enacted the Criminal Justice Records Act in 1977. §§ 24–72–301 to –309, 10B C.R.S. (1982). *See also* 1977 Colo.Sess.Laws, ch. 340 at pp. 1244–1250. This was a comprehensive act defining criminal justice records and providing for the maintenance and public inspection of such records. The Act also permitted certain criminal justice records to be sealed and established the conditions under which such records could be removed from public inspection by sealing. Section 24–72–308(1) of the Act provided that:

Any person in interest may petition the district court of his residence or of the district in which the arrest and criminal records information pertaining to him is located for the sealing of all or any part of said record, except basic identification information.[1]

In addition to subsection (1) quoted above, the remaining subsections of section 24–72–308 established how the court was to consider the petition for sealing records. After notice to the affected law enforcement authorities, the court was required to hold a hearing at which the court would balance the interests asserted by the petitioner against the public interest in retaining the records. If the court found that the petitioner's interests outweighed the public interest, then it could seal such records or any part of them, except basic identification information.

The 1977 statute was repealed and re-enacted in 1988. § 24–72–308, 10B C.R.S. (1988). *See also* 1988 Colo.Sess.Laws ch. 190 at p. 980. At that time, the legislature narrowed the category of persons eligible for the statutory process applicable to the sealing of arrest and criminal records information. The revised section 24–72–308 reads in part as follows:

Any person in interest may petition the district court of the district in which any arrest and criminal records information pertaining to said person in interest is located for the sealing of all of said records, except basic identification information, *if the records are a record of official actions involving a criminal offense for which said person in interest was not charged, in any case which was completely dismissed, or in any case in which said person in interest was acquitted.*

(emphasis added). The effect of this change is that persons who have been convicted of criminal offenses no longer can invoke the petition and hearing provisions of the statute. In all other relevant respects, the statute remained the same.

In 1969, D.K.B. pled guilty to voluntary manslaughter, and he served his sentence until it was fully discharged in 1973. In 1990, D.K.B. petitioned the trial court to have the records of his manslaughter conviction sealed. D.K.B. alleged that he had had no further arrest or criminal record since his 1969 felony conviction; that justice would be served by sealing his records because D.K.B. is a productive member of society; and that the harm to D.K.B.'s privacy or the dangers of unwarranted adverse consequences to him outweighed the public interest in retaining the records. In a written order, the trial court denied D.K.B.'s petition, citing the amended stat-

---

1. "Person in interest" is defined as:

the person who is the primary subject of a criminal justice record or any representative designated by said person by power of attorney or notarized authorization; except that if the subject of the record is under legal disability, "person in interest" means and includes his parents or duly appointed legal representative.

§ 24–72–302(10), 10B C.R.S. (1982). "Arrest and criminal records information" is defined as:

information reporting the arrest, indictment, or other formal filing of criminal charges against a person; the identity of the criminal justice agency taking such official action relative to an accused person; the date and place that such official action was taken relative to an accused person; the name, birth date, last known address, and sex of an accused person; the nature of the charges brought or the offenses alleged against an accused person; and one or more dispositions relating to the charges brought against an accused person.

§ 24–72–302(1), 10B C.R.S. (1982).

ute as permitting criminal records to be sealed only if a criminal case is dismissed or the defendant is acquitted.

R.C.F. pled guilty to a class 4 felony (conspiracy to distribute a schedule II controlled substance) in 1983. §§ 12–22–301 to –322, 5A C.R.S. (1973) (Colorado Controlled Substances Act). He was sentenced to the Department of Corrections, where he was confined until 1987, when he was resentenced to four years probation. In 1989, R.C.F. petitioned to have the records of his felony conviction sealed. R.C.F. alleged that his 1983 felony conviction constituted his entire criminal record; that he was rehabilitated; that he desired to become bonded to pursue an employment opportunity; and that justice would be served by sealing his records because the danger of adverse, unwarranted consequences to him outweighs the public interest in open records. He also alleged that the applicable law was section 24–72–308(3) of the repealed 1977 statute.

The district attorney opposed R.C.F.'s petition and, after the case was briefed and argued, the trial court denied the petition. The trial court's written order rejected R.C.F.'s claim that the 1988 amendments denied him a vested substantial right and characterized the 1977 statute as creating "at best" an unmatured contingency.

■ D.K.B. and R.C.F. (hereafter "respondents") appealed the trial court rulings. In *D.K.B. v. People*, 824 P.2d 68 (Colo.App.1991), the court of appeals held that the legislature's repeal and reenactment of the statute eliminated a prior vested right—the right of a convicted person to petition and be heard on having one's criminal record sealed in order to ensure that

person's right to privacy. Therefore the court found that the statute was unconstitutionally retrospective in its application. Colo. Const. Art. II, § 11.[2] Relying on its decision in *D.K.B.*, the court of appeals, in an unpublished decision, held that R.C.F. also had a vested right in petitioning the court to have his records sealed, and therefore the trial court erred in refusing to hear his petition. Because we disagree and find that a convicted person has no such vested right to petition, we reverse the judgments of the court of appeals in these two cases.

## II.

### A.

To place the 1977 and 1988 statutes in perspective, we briefly review the relevant caselaw. We recognized the existence of a right to privacy in Colorado in *Rugg v. McCarty*, 173 Colo. 170, 476 P.2d 753 (1970). In doing so, we followed in the footsteps of the United States Supreme Court, which found that there is a constitutional and fundamental right to privacy independent of the enumerated protections of the Bill of Rights. *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). The comprehensive confines and boundaries of this right, however, were not set forth in *Rugg*, but were left to be delineated in future cases. *Rugg*, 173 Colo. at 175, 476 P.2d at 755 ("We do not attempt to comprehensively define the right of privacy, nor to categorize the character of all invasions which may constitute a violation of such right.").

One such case is *Davidson v. Dill*, 180 Colo. 123, 503 P.2d 157 (1972), in which we

---

**2.** Section 11 of Article II reads as follows: "No ex post facto law, nor law impairing the obligation of contracts, or retrospective in its operation, or making any irrevocable grant of special privileges, franchises or immunities, shall be passed by the general assembly." It is well settled in our jurisdiction that the purposes of the provision forbidding ex post facto laws and the provision forbidding retrospective laws are similar; both seek to prevent unfairness in altering the legal consequences of events or trans-

actions after the fact. *Peoples Natural Gas Div. v. Public Util. Comm'n*, 197 Colo. 152, 590 P.2d 960 (1979). The difference between the two is that the term "ex post facto" applies only to criminal cases while "retrospective" applies to civil cases. *Denver S.P. & P.R.R. v. Woodward*, 4 Colo. 162 (1878). Here, only the prohibition against retrospective legislation is relevant since the issue, although presented in the context of criminal records, is a civil one.

found that the right of privacy extended to the arrest records of a woman who had been acquitted of criminal charges. In *Davidson*, we held that "a court should expunge an arrest record or order its return when the harm to the individual's right of privacy or dangers of unwarranted adverse consequences outweigh the public interest in retaining the records in police files." 180 Colo. at 130, 503 P.2d at 161. This recognition of an individual's right to privacy in otherwise public records seeks to protect "the individual interest in avoiding disclosure of personal matters." *Martinelli v. Dist. Ct.*, 199 Colo. 163, 612 P.2d 1083, 1091 (1980) (*quoting Whalen v. Roe*, 429 U.S. 589, 599, 97 S.Ct. 869, 876, 51 L.Ed.2d 64 (1977)). We identified this aspect of the right to privacy as "the right to confidentiality." *Martinelli*, 612 P.2d at 1091. Under *Davidson*, an acquitted criminal defendant's right of privacy (or the right to confidentiality) in an arrest record "is a fundamental right implicit in the concept of ordered liberty and that it is as well within the penumbras of the specific guarantees of the Bill of Rights." *Davidson*, 180 Colo. at 131, 503 P.2d at 161 (*quoting Eddy v. Moore*, 5 Wash.App. 334, 487 P.2d 211, 217 (1971)).[3]

The right to confidentiality that we recognized in *Davidson* was qualified rather than absolute. We held that the acquitted person's interest in sustaining her right to privacy must be balanced against the public interest in maintaining such records for effective law enforcement. *Davidson*, 180 Colo. at 130, 503 P.2d at 161. *See also Martinelli*, 612 P.2d at 1091. Thus, "absent a compelling showing of necessity by the government," the acquitted person should be entitled to the return of her fingerprints and photographs. *Davidson*, 180 Colo. at 131, 503 P.2d at 161 (*quoting Eddy*, 487 P.2d at 217).

■ Although the balancing of public and private interests in arrest and convic-

tion records discussed in *Davidson* was embodied in statute by section 24–72–308, C.R.S. (1977), the 1977 legislature expanded the scope of persons eligible for the balancing test beyond the facts of *Davidson* to include not only persons acquitted or not charged but also those convicted of a crime. Neither this court nor the United States Supreme Court has held that a convicted person has a right to privacy in his arrest and conviction records. *See Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). Therefore, whatever interest convicted persons may have in record sealing is not based on the federal or state constitution but stems solely from the 1977 statute. Accordingly, the convicted person's interest and his or her corresponding claim for relief are not entitled to scrutiny of constitutional magnitude. With this background, we turn to the parties' arguments and the court of appeals' decisions.

### B.

The respondents argue that this statutory interest, and the procedure by which it is secured, was a right which vested either when the records came into being at the time of their convictions or when the 1977 statute was passed, whichever occurred later. Under their analysis, the application of the revised statute took away vested rights, thus operating as a substantive statute in violation of the prohibition against retrospective legislation as set forth in Article II, Section 11 of the Colorado Constitution. The essence of the right claimed by the respondents is the ability to petition for relief and to obtain a hearing at which the court must balance the "dangers of unwarranted adverse consequences" to the respondents against the public's interest in open records. § 24–72–308(1)(c), 10B C.R.S. (1988). The People, on the other hand, contend that the process of petition-

---

3. However, we note that in *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), the United States Supreme Court declined to enlarge the right to privacy to encompass a claim that the State may not publicize a record of an official act like an arrest. The Washington Court of Appeals, in *State v. Adler*, 16 Wash. App. 459, 558 P.2d 817, 819 (1976), stated that *Paul* cast serious doubt on the correctness of the holding in *Eddy*.

ing and receiving a hearing in which the balancing test is applied does not involve a vested right but is merely procedural or remedial. As such, the People assert that the statutory repeal does not violate any constitutional prohibition.

The court of appeals concluded that the 1977 statute created a substantive right in *"all* persons, *including those convicted of a crime* . . . to have one's arrest and criminal records sealed." *D.K.B.*, 824 P.2d at 70 (emphasis in original). It found that the legislature could not retrospectively eliminate the right of convicted persons to petition for a hearing because (1) the "previously granted right" had "vested," (2) the right was derived from "fundamental principles," and (3) "the right was *substantive* in nature." *Id.* at 71 (emphasis in original). Clearly, the second reason advanced by the court of appeals is wrong. Under the relevant caselaw which we summarized above, there is no constitutional or other fundamental right which may be asserted by a convicted felon under these circumstances. We also reject the other two conclusions reached by the court of appeals for the following reasons.

■ At the outset, we note that the distinction between substantive and remedial statutes lies in the fact that substantive statutes create, eliminate or modify vested rights or liabilities, while procedural statutes relate only to remedies or modes of procedure to enforce such rights or liabilities. *Smith v. Putnam,* 250 F.Supp. 1017, 1018 (D.Colo.1965); *Kardoley v. Colo. St. Personnel Bd.,* 742 P.2d 934, 935 (Colo. App.1987).

Contrary to the respondents' assertions and the court of appeals' holding, the opportunity to petition and to have the balancing test applied in a hearing is not a vested right and the statute granting such an opportunity is not a substantive one. The respondents argue that the vesting occurred at the creation of the records, or when the 1977 statute was enacted, since a claim for relief could first be sustained at

that time. Respondents misunderstand the definition of a vested right.

■ A right is only vested when it is not dependent upon the common law or the statute under which it was acquired for its assertion, but has an independent existence. *See* Norman J. Singer, 1A *Sutherland Statutory Construction* § 23.34 (5th ed. 1985) (*citing, e.g., Ettor v. Tacoma,* 228 U.S. 148, 33 S.Ct. 428, 57 L.Ed. 773 (1912); *Coombes v. Getz,* 285 U.S. 434, 52 S.Ct. 435, 76 L.Ed. 866 (1932)). Here, the respondents' ability to petition and to have the balancing test applied is clearly dependent upon and wholly derived from the statute. As the trial court recognized in *R.C.F.,* this right is inchoate rather than vested. It does not exist in the sense of a vested right until it is exercised. As a contingency, it is subject to the well-established principle that "[p]owers derived wholly from statute are extinguished by its repeal. . . . And it follows that no proceedings can be pursued under the repealed statute, though begun before the repeal, unless such proceedings be authorized under a special clause in the repealing act." *Vail v. Denver Bldg. & Const. Trades Council,* 108 Colo. 206, 210, 115 P.2d 389, 391 (1941) (*quoting Flanigan v. Sierra Cty.,* 196 U.S. 553, 560, 25 S.Ct. 314, 315, 49 L.Ed. 597 (1905)). There is no such authorizing clause in the 1988 statute. Therefore, the ability of the respondents to petition and be heard under the 1977 statute was "extinguished" by its repeal.

In the past, we have described the statutory process of submitting a petition to seal criminal records and receiving a hearing on the petition as a procedural claim for relief—a remedy—by which a person may attempt to avoid the adverse consequences of having a criminal record. For example, in *Tipton v. City of Lakewood,* 198 Colo. 18, 595 P.2d 689 (1979), we called the ability to petition the court under section 24–72–308 a "remedy." *Id.* at 22, 595 P.2d at 692. The court of appeals also has found the procedures set forth in the Criminal Justice Records Act to be statutory reme-

dies. *People v. Wright,* 43 Colo.App. 30, 598 P.2d 157 (1979). This interpretation finds support in other jurisdictions. *See, e.g., Springer v. State,* 50 Or.App. 5, 621 P.2d 1213 (1981) (court labeled the expunction and sealing of arrest records a "remedy"); *State v. T.P.M.,* 189 N.J.Super. 360, 460 A.2d 167 (1983) (court found expungement statute to be remedial, not punitive).

The characterization of the Act as providing a remedy rather than creating a vested substantive right is correct. It is obvious that the 1977 statute itself did not create the arrest and criminal records which the respondents seek to expunge because those records resulted from the respondents' criminal convictions. Likewise, no right to expungement was given by the legislature. The 1977 statute simply created a process by which a trial court was required to conduct a hearing and to weigh a convicted person's petition for sealing against the public interest in maintaining open records. Both respondents had several years in which they could have taken advantage of the 1977 remedy but did not do so.

■ The test to determine whether a statute is illegally retrospective under Article II, Section 11 of the Colorado Constitution, is if it "takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability to transactions or considerations already past." *Jefferson Cty. Dept. of Social Services v. D.A.G.,* 199 Colo. 315, 317, 607 P.2d 1004, 1006 (1980) (*quoting Denver S.P. & P.R.R. v. Woodward,* 4 Colo. 162, 167 (1878)); *Wood v. Beatrice Foods Co.,* 813 P.2d 821, 823 (Colo.App.1991). In the present situation, the repeal of the 1977 statute did not violate the constitutional prohibition against retrospective legislation because it did nothing more than take away the respondents' unexercised opportunity to seek relief from the court under that statute.

■ As we have stated before, "[t]he abolition of an old remedy, or the substitution of a new one, neither constitutes the impairment of a vested right nor the imposition of a new duty, for there is no such thing as a vested right in remedies." *Continental Title Co. v. Dist. Ct.,* 645 P.2d 1310, 1315 (Colo.1982) (*quoting D.A.G.,* 199 Colo. at 318, 607 P.2d at 1006 (*quoting Moore v. Chalmers–Galloway Live Stock Co.,* 90 Colo. 548, 554–55, 10 P.2d 950, 952 (1932))). This analysis holds true even if a party is disadvantaged by the change in status of the remedy, as here, where the trial courts no longer are required to apply the statutory weighing process to convicted persons.

Furthermore, because it is remedial in nature, the revised statute is properly characterized as procedural, not substantive, and applies to the respondents. "Unless a contrary intent is expressed in the statute, changes in procedural law are applicable to existing causes of action and not merely to those which may accrue in the future." *Kardoley,* 742 P.2d at 935. *See also Continental Title Co.,* 645 P.2d at 1315.

■ Finally, the application of a statute is not rendered unlawfully retrospective merely because the facts upon which it operates occurred before the adoption of the statute. *Continental Title Co.,* 645 P.2d at 1314; *Zaragoza v. City of Lakewood,* 702 P.2d 274, 276 (Colo.1985). Therefore, because both respondents acquired criminal records before the revision of the 1977 statute does not mean that they are exempt from the application of the revised statute and we conclude that the district courts did not err in dismissing their petitions.

We reverse the judgments of the court of appeals and remand the cases with directions to affirm the judgments of the district courts.

KIRSHBAUM, J., specially concurs, and QUINN, J., joins the special concurrence.

Justice KIRSHBAUM specially concurring:

The majority concludes that section 24–72–308(3)(a), 10 C.R.S. (1982) (the 1977 stat-

ute), and section 24–72–308(1)(a), 10B C.R.S. (1988) (the 1988 statute), created only procedural rights which never vested and are therefore not protected by the prohibition against retrospective legislation established by article II, section 11, of the Colorado Constitution. In my view, these statutes created both substantive and procedural rights. However, because the respondents failed to exercise the substantive rights granted to them by the 1977 statute prior to the repeal of that statute and because no constitutionally protected interests are involved here, the respondents' rights did not vest for purposes of retroactivity analysis. I therefore concur in the result reached by the majority.

The 1977 statute provided in pertinent part as follows:

> **Sealing of records.** (a) Any person in interest may petition the district court of the district in which the arrest and criminal records information pertaining to him is located for the sealing of all or any part of said record, except basic identification information.

§ 24–72–308(3)(a), 10 C.R.S. (1982). By adopting this provision, the General Assembly created a right to seek a court order sealing certain criminal records, effective December 31, 1977, for the benefit of numerous classes of persons, including persons such as the respondents. Ch. 340, sec. 1, § 24–72–308, 1977 Colo.Sess.Laws 1244, 1249. As the majority notes, other provisions of the 1977 statute established procedures by which a petition might be presented to and ruled upon by a district court. Maj. op. at 1328.

The 1977 statute was repealed by the adoption of the 1988 statute. Ch. 190, sec. 3, § 24–72–308, 1988 Colo.Sess.Laws 979. The 1988 statute provides that petitions to seal a criminal record may be filed only if the record in question is "a record of official actions involving a criminal offense for which said person in interest was not charged, in any case which was completely dismissed, or in any case in which said person in interest was acquitted." § 24–72–308(1)(a), 10B C.R.S. (1988). By adopting the 1988 statute, the General Assembly abolished the right of convicted persons, such as respondents, to file petitions to seal records in their cases. The question posed here is whether the respondents' rights to seek a court order sealing their criminal records survived the repeal of the statute that created those rights.

Article II, section 11, of the Colorado Constitution prohibits the enactment of a law which is "retrospective in its operation." A statute is impermissibly retrospective if it takes away or impairs vested rights acquired under existing laws, or creates new obligations, imposes new duties, or attaches new disabilities to past transactions or considerations. *P–W Investments, Inc. v. City of Westminster*, 655 P.2d 1365, 1371 (Colo.1982); *Jefferson County Dep't of Social Servs. v. D.A.G.*, 199 Colo. 315, 317, 607 P.2d 1004, 1006 (Colo.1980); *Denver, S. Park & Pac. Ry. Co. v. Woodward*, 4 Colo. 162, 167 (1878). Application of a newly adopted statute to an existing claim for relief does not violate the constitutional prohibition against retroactive legislation if the statute effects a change that is only procedural or remedial in nature. *Continental Title Co. v. District Court*, 645 P.2d 1310, 1315 (Colo.1982); *Jefferson County Dep't of Social Servs.*, 199 Colo. at 318, 607 P.2d at 1006. As we observed in *Continental Title Co.*, 645 P.2d 1310, " '[t]he abolition of an old remedy, or the substitution of a new one, neither constitutes the impairment of a vested right nor the imposition of a new duty, for there is no such thing as a vested right in remedies.' " *Id.*, 645 P.2d at 1315, (quoting *Jefferson County Dep't of Social Servs.*, 199 Colo. at 317, 607 P.2d at 1006). *See also In re Colorado Mercantile Co.*, 299 F.Supp. 55 (D.Colo.1969); *Smith v. Putnam*, 250 F.Supp. 1017 (D.Colo.1965).

Some statutes may of course be categorized as either substantive or remedial. Substantive statutes create, eliminate or modify vested rights or liabilities, while procedural statutes relate only to remedies

or modes of procedure to enforce such rights or liabilities. *Smith,* 250 F.Supp. at 1018; *Kardoley v. Colorado State Personnel Bd.,* 742 P.2d 934, 935 (Colo.App.1987). However, statutes which contain procedural or remedial provisions must nevertheless be deemed substantive statutes for retroactivity purposes if they in fact alter vested rights.

The 1977 statute contains both substantive and procedural elements. It grants convicted persons the right to seek a court order sealing their criminal records—a right that did not exist at common law prior to 1977. As the majority explains, "whatever interest convicted persons may have in record sealing is not based on the federal or state constitution but stems solely from the 1977 statute." Maj. op. at 1330. The fact that the 1977 statute establishes procedures by which a convicted person may exercise the right to seek a court order sealing criminal records does not alter the additional fact that the same statute created that substantive right.

The question for retroactivity purposes is whether the respondents' substantive rights vested prior to the repeal of the 1977 statute. There are no bright line tests to determine what constitutes a vested right or when that right accrues. *See, e.g., Martin v. Board of Assessment Appeals,* 707 P.2d 348 (Colo.1985); *P–W Investments, Inc.,* 655 P.2d 1365; *Lakewood Pawnbrokers, Inc. v. City of Lakewood,* 183 Colo. 370, 517 P.2d 834 (1973); *Berman v. City and County of Denver,* 120 Colo. 218, 209 P.2d 754 (1949). A right having independent constitutional significance and therefore protected from governmental deprivation without due process of law may be deemed a vested right. *See United States v. Security Indus. Bank,* 459 U.S. 70, 79, 103 S.Ct. 407, 413, 74 L.Ed.2d 235 (1982) (provision in the Bankruptcy Code may not operate retrospectively to destroy preexisting property rights in liens acquired before the enactment date in the absence of an explicit command from Congress); *Ettor v. Tacoma,* 228 U.S. 148, 33 S.Ct. 428, 57 L.Ed. 773 (1913) (repealing statute deprived plaintiffs of a vested property right, that right being the fixed liability of the city to compensate plaintiffs for damage to their property resulting from highway improvements).

A right that is created by statute and is not constitutionally protected but has been reduced to possession or perfected by final judgment may also be deemed vested. C. Dallas Sands, 1A *Statutes and Statutory Construction* § 23.35 (4th ed. 1985). To be "vested," therefore, a right must consist of more than a mere expectation based on an anticipation of the continuance of an existing legal status. The right must have in some manner matured to the extent that the owner thereof has acquired legal or equitable title to the present or future enforcement of a demand or a legal exemption from the demand of another. *State v. Matlock,* 27 Wash.App. 152, 616 P.2d 684 (1980); *Aetna Ins. Co. v. Richardelle,* 528 S.W.2d 280 (Tex.Civ.App.1975). *See also Lines v. City of Topeka,* 223 Kan. 772, 577 P.2d 42 (1978), and *Johnson v. Continental West, Inc.,* 99 Wash.2d 555, 663 P.2d 482 (1983) (no person has a vested right in any rule of law entitling him or her to insist it shall remain unchanged for his or her benefit). The respondents' interests in seeking court orders to seal their criminal records constituted anticipations of continued legal status at the time the 1977 statute was repealed. The respondents took no steps to perfect their rights until after the adoption of the 1988 statute. In these circumstances, their substantive rights were not vested for purposes of retroactivity analysis when the 1977 statute was repealed.

As a general rule, repealing such statutes terminates all non-vested rights dependent upon the repealed statute and all proceedings based upon it, unless such pending proceedings are expressly exempted from the general rule by the repealing act. *Hertz v. Woodman,* 218 U.S. 205, 30 S.Ct. 621, 54 L.Ed. 1001 (1910); *Flanigan v. Sierra County,* 196 U.S. 553, 25 S.Ct. 314, 49 L.Ed. 597 (1905); *Vail, State Highway Eng'r v. Denver Bldg. and Constr. Trades*

*Council,* 108 Colo. 206, 115 P.2d 389 (1941); 73 Am.Jur.2d *Statutes* § 384 (1974); C. Dallas Sands, 1A *Statutes and Statutory Construction* § 23.33 (4th ed. 1985).[1] The 1988 statute contains no such exemption. Because the respondents failed to exercise their rights to seek court orders sealing their criminal records prior to the repeal of the statute that created those rights, their rights were not vested at the time the General Assembly adopted the 1988 statute.

Because I believe that the 1977 statute created both substantive and procedural rights, I do not agree with the majority's characterization of that statute as remedial. Maj. op. at 1332. However, because the respondents' substantive rights had not vested prior to the repeal of that statute, I agree with the majority's conclusion that the judgments of the Court of Appeals must be reversed.

Accordingly, I concur in the result reached by the majority.

I am authorized to say that Justice QUINN joins in this special concurrence.

---

1. Under certain circumstances, even vested rights may be impaired without violating due process of law standards. For example, the state's inherent sovereign power includes the so-called "police power" right to interfere with vested property rights whenever reasonably necessary to the protection of the health, safety, morals and general well-being of the state's citizens. *See, e.g., Lakewood Pawnbrokers, Inc. v. City of Lakewood,* 183 Colo. 370, 517 P.2d 834 (1973) (citing *Hoskinson v. Arvada,* 136 Colo. 450, 319 P.2d 1090 (1957)); *McCormick v. Montrose,* 105 Colo. 493, 99 P.2d 969 (1939); *Colorado Springs v. Miller,* 95 Colo. 337, 36 P.2d 161 (1934). So long as the state adheres to procedural due process requirements, vested rights may be infringed or curtailed by the state in a valid exercise of its police power.